BARBARA OBEDA *v.* BOARD OF SELECTMEN OF THE TOWN
OF BROOKFIELD ET AL.

LOISELLE, BOGDANSKI, PETERS, HEALEY and PARSKEY, JS.

Argued January 10—decision released May 13, 1980

*Wesley W. Horton,* with whom was *Daniel T. Eberhard,* for the appellant (named defendant).

*Samuel M. Chambliss,* for the appellee (plaintiff).

*Barbara S. Miller* and *Daniel Millstone* filed a brief as amici curiae.

PARSKEY, J.  The defendant board of selectmen (hereinafter the board) has appealed the judgment of the court ordering the board to restore the plaintiff forthwith as a member of the Inland Wetlands Commission (hereinafter the commission) of the town of Brookfield.  Because on the basis of the record the trial court's decision was proper we affirm.

In January, 1978, the plaintiff was appointed by the board to a four-year term as a member of the commission. She subsequently was elected its presiding officer. In December, 1978, the board voted to suspend the plaintiff as a member of the commission denoting the cumulative effect of seven specified reasons as the cause of its action. In January, 1979, after a public hearing held at the plaintiff's request, the board voted to remove the plaintiff from office.

Section 411[1] of the charter of the town of Brookfield authorizes the board to remove for cause any person appointed by it to any office or position. " 'Cause' implies a reasonable ground for removal as distinguished from a frivolous or incompetent ground. *Riley* v. *Board of Police Commissioners*, 147 Conn. 113, 118, 157 A.2d 590; *McNiff* v. *Waterbury*, 82 Conn. 43, 46, 72 A. 572." *Molino* v. *Board of Public Safety*, 154 Conn. 368, 374, 225 A.2d 805 (1966). The cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial

---

[1] "Section 411. INVESTIGATION, REMOVALS AND SUSPENSIONS. B. REMOVALS AND SUSPENSIONS. 1. The Board of Selectmen shall have the power to suspend by an affirmative vote of two (2) members, and to remove for cause by an affirmative vote of all members, any person appointed to any office or position by the Board; 2. The Board shall act first by suspending such person and shall promptly serve such person with a copy of the resolution of suspension together with the reasons therefor. If within ten (10) days after service of said resolution such person shall file a request in writing with the Town Clerk for a public hearing before the Board, the hearing requested shall be held, at a time and place set by the Board, not less than five (5) days nor more than fifteen (15) days after the filing of the request. At such hearing the person may be represented by counsel. If no hearing is requested or at the conclusion of the hearing, the Board shall promptly by resolution terminate the suspension and either restore the person to, or remove such person from office or employment . . . ."

nature directly affecting the rights and interests of the public. 67 C.J.S., Officers § 120. Whether the assigned cause is sufficient in law to justify removal is a question for the court. *State ex rel. Raslavsky* v. *Bonvouloir,* 167 Conn. 357, 361, 355 A.2d 275 (1974); *Wilber* v. *Walsh,* 147 Conn. 317, 319, 160 A.2d 755 (1960). If the cause alleged is legally sufficient, then the judgment of the officer or board having the power of removal is conclusive, provided that there is evidence to support it. *State ex rel. Raslavsky* v. *Bonvouloir,* supra, 360–61.

The specified grounds on which the board acted are seven in number. The defendant concedes that two of these are legally insufficient to support removal and therefore has limited its appeal to the remaining five grounds. These are: (1) refusing to disqualify herself on a matter before the commission; (2) release of minutes of an "executive" session without giving other members of the commission an opportunity to approve them; (3) inability to control commission meetings; (4) attempting to secure resignation of a senior commission member; and (5) depriving commission of professional advice.

### REFUSAL TO DISQUALIFY

The asserted basis for this charge is a claim by an applicant before the commission that the plaintiff was antagonistic toward him. The applicant attempted to disqualify three members of the commission on the same ground. The plaintiff, feeling that there was no substance to the claim, refused to disqualify herself.

While it is true that neutrality and impartiality of members of administrative boards and commis-

sions are essential to the fair and proper operation of these authorities; *Lake Garda Improvement Assn.* v. *Town Plan & Zoning Commission,* 151 Conn. 476, 480, 199 A.2d 162 (1964); a charge of bias must be supported by some evidence proving probability of bias before an official can be faulted for continuing to execute her duties.

Local wetlands commissions are charged, under General Statutes § 22a-28, with the responsibility of preserving the wetlands against despoliation and destruction. The discharge of this responsibility may require the commission members to reject an otherwise acceptable application because the project is likely to have an adverse impact on the environment. In these circumstances disappointed applicants may misconstrue such rejections as being motivated by personal animosity. There might also be cases where applicants would desire to have their projects approved even at the expense of the environment. If we accept the board's contention, in either situation the applicant could bring about the disqualification of members of the commission by the simple device of claiming hostility, for when so challenged a commission member would either have to disqualify self or face removal for failure to do so. The public policy of this state to preserve and protect wetlands would suffer by having applications affecting the wetlands judged only by those who in the name of progress would be willing to approve applications whatever the adverse environmental impact. The claim of hostility without more is not a sufficient basis for disqualification. In the absence of a showing that the commission member could not hear a given application fairly and impartially, her refusal to recuse herself cannot be a ground for her removal.

The board's further contention that the plaintiff compounded her error by putting the question to other members of the commission including the alternates is also without merit. The charter makes no provision regarding the determination of disqualification. Although the town attorney advised the plaintiff that the decision to disqualify rested with her alone, the plaintiff cannot be faulted for seeking the views of other members of the commission on the question. The fact that a majority felt that she should not do so could be considered by her in making her ultimate decision. Since the question put to the other members was purely advisory, permitting both members and alternates to vote on it was of no consequence.

### RELEASE OF MINUTES

The plaintiff is charged with releasing to the press minutes of a purported executive session of the commission without giving the other members of the commission an opportunity to approve them before their release. It is claimed that this constituted an act of discourtesy to the other members. Discourtesy and even rudeness not amounting to illegality of conduct, or to oppression under color of office, hardly rise to the level of cause for removal from office. 63 Am. Jur. 2d, Public Officers and Employees, § 202.

### INABILITY TO CONTROL MEETINGS

The defendant next charges the plaintiff with an inability to control commission meetings. The specification under this charge relates to an argument between the plaintiff and a senior commission member regarding the disqualification issue referred to above. The trial court quite properly characterized this controversy as a personality clash between

members of the commission. In the absence of a showing that internal bickering or inability to control meetings impaired the functioning of the commission, an isolated occurrence such as that involved here is not sufficient to warrant removal.

### ATTEMPT TO ELIMINATE SENIOR MEMBER

Next the plaintiff is charged with divisive tactics to eliminate from membership a senior commission member. It is specified that the plaintiff, after a majority of the members of the commission voted not to accept the resignation of a senior commissioner, nevertheless submitted the senior member's letter of resignation to the first selectman, and requested an appointment with the first selectman for the express purpose of persuading him to accept the resignation. Accepting the charge as factually correct, there is nothing about the conduct specified which would warrant the plaintiff's removal from office. As a member of the commission, and especially as its chairman, the plaintiff had a right if not a duty to express her views with regard to the proposed resignation. Other members had an equal right and duty to express contrary views. Ultimately the decision to accept or reject the proffered resignation was to be made by the board. The board may have felt that in view of the position of a majority of the members of the commission the resignation should not be accepted, but it was not obliged to agree. A free society should encourage the fullest and freest expression of views by public officials without subjecting them to the risk of removal if those views happen to displease higher authority.

### DEPRIVING COMMISSION OF PROFESSIONAL ADVICE

Finally, the plaintiff is charged with depriving the commission of professional advice. The specifica-

tion under this charge is that on one occasion the plaintiff called Howard Kelly, the town engineer, informed him that she had been urged by the members of the commission to use his service, "but she did not know whether she was going to do this or not because she did not think he had the expertise to tell her what she wanted to hear." The specification which relates to an expression of opinion does not support the charge of depriving the commission of professional services. All that it expresses is doubt in the plaintiff's mind about the value of the town engineer's advice for the purposes of the commission. This is further borne out by the plaintiff's testimony at the hearing that when she asked the town engineer what experience he had in hydrology he responded "that he was not basically an environmentalist." The most that can be said about this charge is that the plaintiff had reservations about the value of the town engineer's advice on certain matters before the commission. There is nothing in the record to support the charge that the plaintiff at any time deprived the commission of professional advice.

It should be noted that this is not a case of misconduct or wilful neglect of duty. See *Molino* v. *Board of Public Safety,* supra. The board found none of the charges sufficient in themselves to warrant removal, but relied on the cumulative effect of all the charges. It requires more than a chain of insufficient causal links to justify removal of a public official from office.

There is no error.

In this opinion the other judges concurred.